JONATHAN F. ELLS, GUARDIAN AD LITEM, APPEAL FROM PROBATE (ESTATE OF BENJAMIN EPSTEIN)

SUPERIOR COURT      LITCHFIELD COUNTY      FILE NO. 13125

174

Memorandum filed October 18, 1954.

*Ells, Quinlan & Mead,* of Winsted, for the plaintiff.

*Carmody & Torrance,* of Waterbury, for John S. Feigner, administrator.

*Gruber & Turkel,* of Stamford, for Ida Abramsky.

*Herman M. Levy,* of New Haven, for Hanna Girshevna Gopstein.

*William W. Gager,* of Waterbury, for Colonial Trust Co., executor.

*Harrison & Harrison,* of Greenwich, for Abram Gopstejn, Sora Guberman, and Malka Gopstejn Iurberg.

MURPHY, J. The Probate Court for the district of Winchester, on January 2, 1951, entered a decree in the matter of the estate of Benjamin Epstein, deceased, determining the distributees of income and balance of principal of a trust, and entered an order of distribution. From this decree, the guardian ad litem for undetermined beneficiaries and heirs and for Israel Kopstein, Sarah Leventhal, Israel Levitan, Sarah Mindel Feigelson, and all other persons who might have an interest in the estate of the decedent but are not represented by other counsel, has appealed.

The appeal is to be determined upon the basis of the facts to which the parties stipulated on June 14, 1954. The use of the agreed statement of facts rendered it unnecessary to repeat in this court the lengthy hearings that were required in the Probate Court because of the unusual circumstances of this case. Counsel are to be commended for their cooperation in avoiding additional protracted hearings and delay.

Benjamin Epstein died December 27, 1943. In paragraph eleven of his will, executed April 28, 1931, he established a trust of the residue of his property. The Colonial Trust Company is the trustee. The trust was to continue for five years after his death. One-third of the income was to be paid to the testator's brother, Hirsa Kopstein, also known as Hirsh Gopstein, if living, otherwise to his brother's children; one-third of the income was to be paid to the testator's sister, Sarah Leventhal, if living, otherwise to her son, Israel Levitan; the other third of the income was to be paid to his niece Sarah Mindel, daughter of his sister Rose, who was deceased when he made his will. At the expiration of the five-year period, one-third of the residue was to be paid to each of the principal beneficiaries, if living, or if they were then deceased, to the alternate beneficiaries. The residue of the one-third interest bequeathed to the niece was to be paid to her children, if any, at the termination of the trust. In the event that any of the persons designated as beneficiaries did not survive the testator, he provided that their shares would go to his brother, Hirsa Kopstein, if living, otherwise to his brother's children, share and share alike, and to their heirs and assigns.

The Probate Court found that Hirsa Kopstein, the brother, predeceased the testator and that he was survived by six children, namely, Israel Kop-

stein, Schifra Trivus, Malka Jurburg, Abram Gop-
sztejn, Sora Guberman and Hanna Zeifzieder. Mal-
ka, Abram, Sora and Hanna were living when the
decree was entered. Israel had been heard from
within seven years of that date and could not be
declared legally dead.

The court found that the brother's daughter,
Schifra Trivus, the testator's sister, Sarah Leven-
thal, and her son, Israel Levitan, had all been absent
and unheard from for more than seven years prior
to the date of the decree and, applying the common-
law rule as to presumption of death, found that they
were legally dead. It then went beyond this finding
and also found that they had predeceased the testa-
tor. The appellant challenges this finding.

Paragraph six of the reasons of appeal is suffi-
ciently broad to raise the question of the validity of
this finding with respect to the presumption of and
the date of death of the daughter, Schifra. Para-
graph three of the amendment to the reasons of
appeal specifically attacks the finding in so far as it
presumes the death and date of death of Sarah
Leventhal and Israel Levitan.

The stipulation of facts reveals that Schifra, her
husband and their three children were last seen in
the Vilna ghetto in 1942. There was no evidence
that they were seen or heard of after that year. In
December, 1943, the ghetto was dispersed, and while
many of its inhabitants were killed, others escaped
or were sent to concentration camps on the Baltic
Sea.

As to Sarah Leventhal and her son, Israel Levi-
tan, the stipulation shows that Sarah, then about
seventy-three years of age, was last known to have
resided in Vilna, Poland, in 1941 at the time of the
German invasion. Israel, his wife and daughter,
also lived there. Sarah wrote to the testator on

January 20, 1941. Israel was last seen in the Vilna ghetto in December, 1941. There was no evidence of the whereabouts of Sarah, Israel or his wife and daughter after 1941. When the ghetto was liquidated in 1943, the able-bodied males were sent to concentration camps. Some of the women and children were also sent to concentration camps, from which some escaped.

It is unnecessary to recount here the efforts that were made to locate the testator's heirs, relatives and other interested parties. Because of the dispersal of the Jews who managed to survive the invasion of Poland, the task was tremendous. National and international news services were utilized, as well as organizations and individuals who could possibly be of assistance. The guardian ad litem, especially, did everything that human thought or ingenuity could devise to solve the problem. The result of the search is reflected in the foregoing facts.

On January 2, 1951, when the Probate Court entered its finding and decree, more than seven years had elapsed since there had been any word of Schifra Trivus, Sarah Leventhal and Israel Levitan. Under the rule laid down in *Potter* v. *Prudential Ins. Co.,* 108 Conn. 271, 276, and followed in *Kaminskas* v. *John Hancock Mutual Life Ins. Co.,* 129 Conn. 394, the Probate Court was correct in its conclusion that on the date of the decree the common-law presumption of death applied, and as diligent search had been made for them, the inference that death was the probable reason for the absence could reasonably be drawn.

However, the conclusion that each of these three persons died prior to the testator on December 27, 1943, presents a different and more difficult problem. "[T]he . . . presumption of death [does not fix] the time of death as [being] at the end of the

seven-years period. . . . [T]he fact of death may be [thus] established . . . not its date; that must be fixed by a further inference to be drawn from those circumstances or others in evidence." *Potter* v. *Prudential Ins. Co.,* supra, 283 (dissenting opinion).

Governed as I must be by the agreed statement of facts, I can only conclude that there was error in the determination of their deaths at sometime prior to that of the testator. The periods of time that elapsed between the dates they were last seen or heard from and the date of his death are too short to permit the inference of death prior to December 27, 1943.

A situation involving the same principle is reported in *Allen* v. *Mazurowski,* 317 Mass. 218. In that case, the decedent's widow and children, also residing in Poland, had been heard from up to three years before his death. They were in enemy-occupied territory. The court said (p. 220): "There was no unexplained absence on their part from their domicil or established residence for more than seven years prior to the death of the decedent which would give rise to the common law presumption that they had predeceased the decedent. . . . [T]here being no proof of actual death, there is a presumption that at the time of the death of the intestate his widow and children were living which continues until the contrary is shown, and as presumptively living persons they became entitled to share in the estate of the decedent. . . . "

In the case at bar, it remains to be determined whether the exposure to death within the period that elapsed between the times that they were last seen or heard of and the testator's death constituted a sufficiently great and specific peril which under all the circumstances rendered it reasonably certain that they were dead on that date. While it is quite possible that Sarah Leventhal because of her age

might have succumbed, it is equally possible that she could have been in a concentration camp on December 27, 1943. As a male, Israel Levitan more than likely was in such a camp. Schifra Trivus could well have been in and escaped from such a place of confinement. It must be borne in mind that the Vilna ghetto was liquidated in December, 1943, the same month the testator died. Who can say that they were not the last to leave?

The burden of proving that they were dead was upon the four presently living. *Detroit United Ry.* v. *Weintrobe,* 259 F. 64, 67.

Though they were last seen in late 1941 or in 1942, the fact that many were sent to concentration camps and escaped gives weight to the presumption of continuing life. Either one or all three, the spouses and children, could well have been alive when the testator died. While they had been exposed to a specific and great peril, that in itself, as of December 27, 1943, is not sufficient to overcome the presumption that they were alive on that day. *Cone* v. *Dunham,* 59 Conn. 145, 160; *Allen* v. *Mazurowski,* supra; *Lachowicz* v. *Lechowicz,* 181 Md. 478; *Detroit United Ry.* v. *Weintrobe,* supra; 16 Am. Jur. 32.

The operation of the presumption of death at the end of the seven-year period cannot be invoked to determine the time of death within that period. *Lachowicz* v. *Lechowicz,* supra. The inference of death earlier than the expiration of the seven-year period should not have been drawn. The Probate Court should not have found that Schifra Trivus, Sarah Leventhal and Israel Levitan died prior to December 27, 1943.

It may well be, in view of the time that has since elapsed, that upon a final determination of this matter the eventual distribution of this trust may be to

the same persons and in the same proportions as in the decree which is the subject of this appeal. That is not sufficient reason to sustain the decree. The guardian ad litem, appointed as he was by the court to protect the interests of those "in absentia," had no discretion but to take this appeal, though he may feel that the eventual result will be no different.

The appeal is sustained. So much of the order and decree as determines that Schifra Trivus, Sarah Leventhal and Israel Levitan predeceased the testator and determines the distributees and the order of distribution of the trust is reversed and set aside. The matter is remanded to the Probate Court for the district of Winchester for further proceedings in accordance with this opinion. Judgment will be entered accordingly.